## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| TNC KAZCHROME JSC<br><br>                     Plaintiff,<br>v.<br><br>UNITED STATES,<br><br>                     Defendant. | Court No. 25-00127 |

## COMPLAINT

Plaintiff TNC Kazchrome JSC ("Kazchrome"), by and through its counsel, files this Complaint to challenge the unlawful decision by the Department of Commerce ("Commerce") to deviate from its practice and disregard substantial evidence on the record in its determination of the date of sale for purposes of capturing the universe of U.S. sales in the dumping calculations. Commerce's selection of the date generated a margin where none existed under Commerce's well-established methodology.  Kazchrome provided substantial – and uncontroverted – evidence, including numerous supporting documents, which demonstrated that the final invoice date for its U.S. sales was the date upon which the final material terms of its U.S. sales were set.  Commerce's practice, in accordance with its regulations, is to use the date upon which final material terms are set as the date of sale.

Moreover, to the extent that Commerce found the material terms of sale to have been finalized on a different date (*i.e.*, the date of title transfer) and nevertheless selected a different date of sale, this decision, too, is unlawful and not supported by substantial evidence on the record. The record undoubtedly contains the date of title transfer for every reported U.S. sale and documentation to support the reported dates.

1

In total, Commerce's decision to deviate from its practice and select a date of sale on which the final terms of sale were not finalized is unlawful and divorced from the factual record. Plaintiff alleges and states as follows:

## ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1.     Plaintiff seeks judicial review of the Final Determination issued by Commerce in the antidumping duty ("AD") investigation of ferrosilicon from the Republic of Kazakhstan (Case No. A-834-812). The period of investigation ("POI") was January 1, 2023, through December 31, 2023. Notice of the final determination was published in the *Federal Register* on March 28, 2025. *See Ferrosilicon from the Republic of Kazakhstan: Final Affirmative Determination of Sales at Less-Than-Fair-Value and Final Negative Determination of Critical Circumstances*, 90 Fed. Reg. 14,077 (Dep't of Commerce, Mar. 28, 2025) ("Final Determination"); *see also* accompanying *Issues and Decision Memorandum for the Final Affirmative Determination of the Less-Than-Fair-Value Investigation of Ferrosilicon from Kazakhstan*, Case No. A-834-812 (Mar. 21, 2025) ("Final IDM"). In making its Final Determination, Commerce elected to disregard substantial evidence on the record which demonstrated the appropriate date of sale to be the final invoice date, and instead selected the shipment date as the date of sale for Kazchrome's U.S. sales. This erroneous decision accounts for the entire AD margin imposed against Kazchrome, and without it, no AD order at all would have issued against the company.

2.     Commerce published the Order, based on the Final Determination, in the *Federal Register* on May 20, 2025. *See Ferrosilicon From Malaysia: Amended Final Determination of Sales at Less Than Fair Value; Ferrosilicon From Brazil, Kazakhstan, and Malaysia: Antidumping Duty Orders*, 90 Fed. Reg. 21,456 (Dep't of Commerce, May 20, 2025) ("Order").

**JURISDICTION**

3.    The U.S. Court of International Trade has jurisdiction over this action pursuant to 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c).

**STANDING**

4.    Plaintiff is a Kazakhstani producer and exporter of ferrosilicon, the merchandise subject to the Order at issue.  Plaintiff participated in Commerce's investigation that resulted in the contested finding by submitting information and argument on the record.  Plaintiff is therefore an interested party within the meaning of 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

**TIMELINESS OF ACTION**

5.    Commerce published the Order in the *Federal Register* on May 20, 2025.  Plaintiff filed the Summons on June 20, 2025, within 30 days of the publication of the Order.[1]  Plaintiff files this Complaint within 30 days of the filing of the Summons.  Accordingly, Plaintiff has filed the Summons and Complaint within the time limits set forth in 19 U.S.C. § 1516a(a)(2)(A) and Rule 3(a)(3) of the Rules of the Court of International Trade.

**PROCEDURAL HISTORY AND BACKGROUND**

6.    Commerce's decision to identify the universe of U.S. sales at issue in the POI based on the date on which the product was shipped, rather than when the final terms of sale were set, is unsupported by substantial evidence on the record and otherwise not in accordance with the law as averred in Counts I and II set forth herein.

---

[1]    June 20, 2025 is the last day of the 30-day period following publication of the CVD Order because June 19, 2025 is a federal holiday.  *See* Rule 6(a)(1)(C) of the Rules of the Court of International Trade ("When the period is stated in days or a longer unit of time . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

7.      On March 28, 2024, CC Metals and Alloys, LLC and Ferroglobe USA, Inc. (collectively "Petitioners") filed a petition for antidumping duty ("AD") and CVD measures on imports of ferrosilicon from Brazil, Kazakhstan, Malaysia, and Russia. *See Ferrosilicon from Brazil, Malaysia, the Republic of Kazakhstan, and the Russian Federation: Petitions for the Imposition of Antidumping and Countervailing Duties Pursuant to Sections 701 and 731 of the Tariff Act of 1930, as Amended, on Behalf of CC Metals and Alloys LLC and Ferroglobe USA, Inc.*, Case Nos. A-351-860, A-834-812, A-557-828, A-821-838, C-351-861, C-834-813, C-557-829, and C-821-839 (Mar. 28, 2024).

8.      Commerce initiated AD investigations with respect to ferrosilicon from Brazil, Kazakhstan, Malaysia, and Russia on April 17, 2025. *See Ferrosilicon from Brazil, Kazakhstan, Malaysia, and the Russian Federation: Initiation of Less-Than-Fair-Value Investigations*, 89 Fed. Reg. 31,137 (Dep't of Commerce, Apr. 24, 2024).

9.      On May 8, 2024, Commerce initially selected TELF AG ("TELF") and YDD Corporation as the mandatory respondents its AD investigation. *See* Memorandum to The File from Mira Warrier, International Trade Compliance Analyst, Office II, Antidumping and Countervailing Duty Operations, *Less-Than-Fair Value Investigation of Ferrosilicon from Kazakhstan: Respondent Identification*, Case No. A-834-812 (May 8, 2024). However, upon receipt of information submitted by TELF and Kazchrome which demonstrated Kazchrome to be the first party with knowledge of the U.S. destination of TELF's exports of subject merchandise, Commerce revised its respondent selection, replacing TELF with Kazchrome. *See* Memorandum to James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, from Minoo Hatten, Director, Office II, Antidumping and Countervailing Duty

4

Operations, *Ferrosilicon from Kazakhstan: Respondent Identification Memorandum – Clarification*, Case No. A-834-812 (Jun. 10, 2024).

10.    Commerce then conducted an individual investigation of Kazchrome, during which Kazchrome submitted responses to all questionnaires issued and other relevant information required by Commerce.  *See* Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Kazchrome's Section A Questionnaire Response*, Case No. A-834-812 (Jul. 8, 2024) ("Kazchrome's AQR"); Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Kazchrome's Sections B-C Questionnaire Response*, Case No. A-834-812 (Aug. 5, 2024) ("Kazchrome's BCQR"); Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Kazchrome's Section D Questionnaire Response*, Case No. A-834-812 (Aug. 14, 2024) ("Kazchrome's DQR"); Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Kazchrome's Section A-C Supplemental Questionnaire Response*, Case No. A-834-812 (Sept. 16, 2024) ("Kazchrome's A-C SQR1"); Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Kazchrome's Section D Supplemental Questionnaire Response*, Case No. A-834-812 (Oct. 4, 2024) ("Kazchrome's DSQR1"); Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Kazchrome's Second Sections A-C Supplemental Questionnaire Response*, Case No. A-834-812 (Oct. 9, 2024) ("Kazchrome's A-C SQR2"); Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Kazchrome's Response to the Department's October 16, 2024 Memorandum*, Case No. A-834-812 (Oct. 16, 2024) ("Kazchrome's October 16 Submission"); Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Kazchrome's Second Section D Supplemental Questionnaire Response*, Case No. A-834-812 (Oct. 22, 2024) ("Kazchrome's DSQR2"); Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Kazchrome's Third Sections A-C Supplemental Questionnaire Response*, Case No. A-834-812 (Oct. 24, 2024) ("Kazchrome's A-C SQR3").

11.     In the submissions to Commerce, Kazchrome explained its U.S. sales process in detail and disclosed that 100 percent of its sales during the POI were to TELF, meaning that the document trail to the U.S. customer was largely the same for all U.S. sales.  Kazchrome also explained that as part of this U.S. sales process, it issued provisional and final invoices to TELF. *See* Kazchrome's AQR, at 19, 22; Kazchrome's BCQR, at C-16, C-18 – C-19.  The provisional invoice included an estimated sales price that was used to calculate an initial payment for purposes of shipment.  *See* Kazchrome's BCQR, at C-18.  The payment served effectively as a deposit for the sale.  The final invoice included a final price based on a separately-issued, final pricing schedule that was issued by TELF to Kazchrome.  This pricing schedule is only deemed accepted by Kazchrome upon issuance of the final invoice to TELF, as set out in the detailed contract maintained between the parties.  The difference between the provisional invoice payment and the final invoice price is then either paid by or reimbursed to TELF if the provisional invoice payment was lower or higher, respectively, than the final price.

12.     Kazchrome also demonstrated in its submissions that title of the ferrosilicon transfers to TELF when the final pricing schedule is issued to Kazchrome – namely, before the final invoice is issued per the contract.  The final price is to be calculated from this final pricing schedule if Kazchrome accepts the schedule.

13.     The submissions to Commerce set out the process in detail and included the governing contract, the dates of the provisional invoices, the notices of title transfer, and the final invoices.  *See* Kazchrome's BCQR, at Exhibit C-1, Exhibit B-4; Kazchrome's A-C SQR1, at Exhibit C-1 (Revised), Exhibit B-4 (Revised); Kazchrome's A-C SQR2, at Exhibit C-1 (Revised 2); Kazchrome's A-C SQR3, at Exhibit B-4 (Revised 2).

14.     On November 6, 2024, Commerce published its Preliminary Determination. *See Ferrosilicon From Kazakhstan: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Negative Determination of Critical Circumstances, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 88,007 (Dep't of Commerce, Nov. 6, 2024) ("Preliminary Determination"); *see also* accompanying *Decision Memorandum for the Preliminary Affirmative Determination in the Less-Than-Fair-Value Investigation of Ferrosilicon from Kazakhstan*, Case No. A-834-812 (Oct. 31, 2024) ("Preliminary IDM"). Commerce decided that the material terms of sale for its U.S. sales were set upon the date of title transfer, but then went on to incorrectly state that the dates of title transfer for the reported U.S. sales were not on the record. *See* Preliminary IDM, at 15; *see also* Memorandum to The File from Samantha Kinney, Senior International Trade Compliance Analyst, AD/CVD Operations, Office II, *Preliminary Determination Margin Calculation for TNC Kazchrome JSC*, Case No. A-834-812 (Oct. 31, 2024), at 3. This was demonstrably untrue; yet, Commerce used this purportedly identified gap to apply its default practice of using the earlier of invoice date or shipment date as the date of sale. *See* Preliminary IDM, at 15. Using the shipment date, it captured sales that predated the POI in its preliminary calculations, resulting in a margin of 6.20 percent.

15.     After Commerce issued its Preliminary Determination, it conducted an on-site sales verification. *See* Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Kazchrome's Sales Verification Exhibits*, Case No. A-834-812 (Dec. 2, 2024) ("Kazchrome's Sales Verification Exhibits"). During the verification, Kazchrome fully supported its previous reporting to Commerce that the date on which the material terms were set was the final invoice date. *See* Kazchrome's Sales Verification Exhibits, at Exhibits SVE-3 & SVE-4. Kazchrome also showed to Commerce that the dates of title transfer were previously on the record and provided supporting

documentation for the reported dates of title transfer. *See* Kazchrome's Sales Verification Exhibits, at Exhibit SVE-4 (*citing* to Exhibit B-4 (Revised 2) of Kazchrome's A-C SQR3).

16.    On December 23, 2024, after completion of the verification process, Commerce issued its sales verification report. *See Verification of the Sales Response of TNC Kazchrome JSC in the Less-Than-Fair-Value Investigation of Ferrosilicon from Kazakhstan*, Case No. A-834-812 (Dec. 23, 2024) ("Sales Verification Report"). In the verification report, Commerce acknowledged that the date of notice of title transfer is used to calculate the final price and that the final price is established in accordance with the pricing schedule. *See* Sales Verification Report, at 6-7.

17.    After the issuance of the sales verification report, Kazchrome timely submitted case and rebuttal briefs focused on sales-related information based on Commerce's instructions. *See Kazchrome Sales Case Brief*, Case No. A-834-812 (Jan. 14, 2025) ("Kazchrome's Sales Case Brief"); *Kazchrome Sales Rebuttal Brief*, Case No. Case No. A-834-812 (Jan. 21, 2025). Kazchrome addressed Commerce's date of sale selection in its sales case brief. Kazchrome detailed throughout the sales case brief information on the record that proved that the final invoice date was the date upon which the material terms of sale were finalized. Kazchrome also reiterated that the dates of title transfer were on the record for Commerce to use should it continue to find the date of title transfer as the date on which material terms of sale were finalized (per its Preliminary Determination analysis and conclusion) and therefore the appropriate date of sale. *See* Kazchrome's Sales Case Brief, at 6 (citing to Kazchrome's BCQR, at Exhibit B-4; Kazchrome's A-C SQR1, at Exhibit B-4 (Revised); Kazchrome's A-C SQR3, at Exhibit B-4 (Revised 2); Kazchrome's Sales Verification Exhibits, at Exhibits SVE-4 & SVE-6).

18.    Despite information on the record that proved the U.S. sales terms were finalized upon issuance of the final invoice and documentation that reported the title transfer dates for all

U.S. sales, Commerce used the shipment date as the date of sale in the Final Determination. *See* Final IDM, at 7. Commerce rejected Kazchrome's reported (and supported) date of sale for three main reasons. First, Commerce inexplicably claimed (again) that the record does not contain documentation to support the title transfer dates. Second, Commerce found that the date of title transfer was not reported in the U.S. sales database submitted by Kazchrome. And third, Commerce claimed that Kazchrome did not argue for the use of the title transfer date as the date of sale. *See* Final IDM, at 7

19.     Commerce's three bases for its date of sale determination ignore the record evidence and facts and contradict substantial evidence on the record, which demonstrates that the appropriate date of sale for Kazchrome's U.S. sales was the final invoice date. Kazchrome submitted, and the record maintains, all title transfer dates and primary documentation supporting all reported title transfer dates. Commerce did not ever instruct nor request Kazchrome to include the title transfer date in its U.S. sales database after Commerce first stated its understanding that the material terms of sale were finalized on the title transfer date. And Kazchrome did request that Commerce use the title transfer date in its Sales Case Brief in the event Commerce continued to incorrectly find that the material terms of sale were finalized on the title transfer date and not on the final invoice date. In ignoring this record evidence, Commerce acted unlawfully with the result of inflating a zero dumping margin to more than 6 percent.

## STATEMENT OF CLAIMS

### COUNT I

20.     Paragraphs 1-19 are incorporated by reference.

21.     The selection of the shipment date as the U.S. date of sale used to determine the universe of U.S. sales for Kazchrome's dumping margin calculation was not supported by substantial evidence on the record and otherwise contrary to law.

22.     Commerce's regulations require it to use "the date on which the exporter or producer establishes the material terms of sale" as the date of sale.  19 C.F.R. § 351.401(i).  The material terms of sale normally include the price, quantity, delivery terms, and payment terms.  *See USEC Inc. v. United States*, 498 F. Supp. 2d 1337, 1343 (Ct. Int'l Trade 2007).  The record shows that the final price of Kazchrome's U.S. sales was not set until the issuance of the final invoice.

### COUNT II

23.     Paragraphs 1-19 are incorporated by reference.

24.     Commerce's findings with respect to the record and information related to the date of title transfer of Kazchrome's U.S. sales were not supported by substantial evidence on the record and otherwise contrary to law.

25.     Commerce's claims that the record does not contain documentation to support title transfer dates and that Kazchrome did not argue for the use of the title transfer date as the date of sale in its Sales Case Brief are plainly wrong.  The record contains primary documentation for all reported U.S. sales related to title transfer, and Kazchrome expressly stated in its Sales Case Brief that Commerce should use the title transfer dates as the date of sale in the event Commerce does not use the final invoice date.

26.     Moreover, Commerce's reliance on the fact that the title transfer dates were not included in the U.S. sales database is not a sufficient basis to reject evidence of all relevant title transfer dates and supporting documentation for each reported date.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(A) Enter judgment in favor of Plaintiff;

(B) Declare Commerce's Final Determination unsupported by substantial evidence on

the record and otherwise not in accordance with law;

(C) Remand this matter to Commerce to issue a revised determination in conformity

with this Court's decision; and

(D) Grant Plaintiff such additional relief as the Court may deem just and appropriate.


Dated: July 18, 2025                          Respectfully submitted,

*/s/ Christine M. Streatfeild*
Christine M. Streatfeild
Justin R. Becker
Lauren Shapiro
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006-4078
Tel.: (202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel to Plaintiff TNC Kazchrome JSC*